Good morning, gentlemen. Mr. Hall, we'll hear from you first. I've been representing Mr. Sera since August 1997, a month after his arrest through the current proceedings, all the post-eviction, the trial. It was a six-day jury trial. It's one of the most interesting trials I've ever been involved in. Here we are at his parole. He had a 30-year sentence under Arkansas law, which was 70% parole eligibility at the time. Nobody convicted of that offense would get out at 70% because that's the parole board's discretion. Nobody challenges that. Finally, they granted him parole, subject to the parole plan after 27 years. He actually flattens his time come July of 27, because that's 30 years after his arrest. What do you mean by flatten? He'd be off parole. He would be completely done. He's on parole now. He was paroled 66 days after this controversy started. I understood that. You're saying that parole will expire in 2027? Another 13 months roughly. If there were no liberty interest here at all, which is what the state contends, then somebody could go into the parole board, an official. I'm not going to say that a citizen who goes into the parole board and complains, because they get an opportunity to be heard. But they go to the parole board and say, I was the victim of this crime. It was horrible. Things didn't come up at trial. I want the parole board to know that. That's perfectly legitimate. I've seen that before. Nobody would contend that violates a liberty interest. It's something that the parole board should consider. But here we've got somebody who actually made up a story to deny the parole plan. I'd been granted parole by the Post Prison Transfer Board. Parole board used to be now Post Prison Transfer Board. He was granted parole subject to the parole plan being approved. So the family goes and they contact the sex offender registry person in the county where they propose to get the land. And he says, this is fine. There's actually two sex offenders not too far away. It's within a regular area where he could be allowed to live. The county sex offender person at the sheriff's office approves of it. Has to go then to the parole board again, or the parole person. The parole person then literally, as we contend, makes up an excuse as to why this parole plan should not succeed. And I hate to use the word doubled down. But after he was caught at it, and they put it in front of the parole board, this is all based on a lie. Fix it. What does he do? He does it again. He literally does it twice. And that's when the suit gets filed. Counsel, I think the question is whether there is a protected liberty interest. And as I understand your argument, it's that this case, these facts are distinguishable because of the malice involved in the allegations here as to why the parole plan was rejected. Is there any case law to support the existence of a protected interest in this situation? I would blend the qualified immunity cases into this. For instance, is he on notice that what he's doing is wrong? And if it's based on a false premise, completely false, made up, then there should be a liberty interest. The government of the United States or any state should not be able to take action against somebody to keep them in prison based on a lie, which is this is what it was. And this guy is still employed with the Arkansas Community Corrections. Even though we pointed out, having gone to the prosecutor about this, the statute of limitations hasn't run on one of the potential offenses. But he entered false information in the state database as to why this happened. Sent it back to the institutional parole officer saying we're denying, we deny that the county level is being released. I don't think the issue here is whether a wrong was done, but whether a due process claim can be stated. I agree. And Judge Rudowsky says it's not, what about bad actors? People do bad things all the time and the government cannot correct every mistake. That's true. But here when you catch them at a false statement and you try to persuade them, look, this is wrong, just fix it, let him out, let him move into the house that the family bought for him, that should create a due process interest there. Otherwise they can just make stuff up and then you've got no claim. Now in the Hodges case, which is what Judge Rudowsky relied on, and if I were in his position I probably would have too, but it would have just tried to distinguish it. Does Mr. Serra have any state claims still pending? He still would. And my reasoning at the district court level was to just say if you're dismissing it, the supplemental claim should go with it because we could still file them in state court. Now on a false imprisonment, that's a one-year limitation, that's gone. Tort of outrage, which we've also pled, that's a three-year limitation. Is there a limitation period told while the case is filed in federal court? I don't know. I'll worry about that when I get a chance to. Well, I mean, couldn't you bring the state claims is the point. Correct. Well, the state claims were brought. And you dismissed without prejudice? Yes. To be able to refile them in state court if we choose to do so. I didn't think it was becoming of Judge Rudowsky's court to have to keep holding on to this case just with the state claims, let it go back to the state court. Right. Well, I understand that. But under equitable tolling, you have to file in state court to claim that it's told, right? I mean, and... We're not there yet. Is that issue on appeal in front of us? No. It's not? It is not. Okay. There is a potential, there is a mootness issue as to the family trust. The family trust part of the case, as Judge Rudowsky held, is moot. And I agree. So the family trust, I could have styled the case, just left them out, but didn't. But because Sarah was ultimately paroled, he's in the house, their claim now is moot. He still has potential damages claim. A punitive damages claim against the individual involved. So his case is still alive. And it's up to a jury to decide, well, he served 27 years on this charge. What's another 66 days? Does it matter? And if you were the person, I could argue to the jury, if you were the person that had been detained an extra two months, you'd be mad too. But he's 67 years old now. And ironically, the verdict came in on his 40th birthday on a Saturday. How did it get worked out in the end? Did the defendant here retract the... Never did. How did you convince the parole board? I don't know. It just happened. I got a call from the AG's office saying parole has been granted. He'd be out tomorrow. That's all we got was a phone call. But you did eventually through the state process get to the... We did. Through the interference that you're alleging. Correct. But that's the 66 day delay. I understand. They did in fact, somebody, we don't know yet because we were still in litigation. We hadn't gotten the discovery. But somebody said, look, just let him out. And they did. But on the qualified immunity claim... Go ahead. I thought maybe you wanted to save for a bubble, but you can handle your time as you wish. I have to put my glasses up. I had cataract surgery and I see differently now. The state points out that without a specific context, qualified immunity has to apply. And we submit the law does not require that specificity. What other cases are like this one anywhere in the country? The only one that we could find really was Hodges. But if you want to trace the entire basis of the legal issue, perjury and false swearing was a crime of common law. The Roaching case, which we cited and relied on outrageous conduct, 1952, Franks versus Delaware, a false statement to get a search warrant to go into somebody's house, 1978, and then a whole body of case law developed in civil claims based on that. 1980 is the Arkansas tort of outrage. But even the Ninth Commandment, thou shalt not bear false witness. And that's exactly what this is. The question is, would he understand what he was doing was wrong? That's the question for qualified immunity. Answer is yes. Thank you. Very well. Thank you for your argument. Mr. Middlebrooks, we'll hear from you. Sir. Good morning, judges. Erickson, Graz, Chief Judge Colleton. May it please the court. I think the court has caught on to the main issue in this case, which is whether or not there's a liberty interest. Not to belabor the point too much, but if this kind of goes back to the Supreme Court with Greenholz, the inmates in Nebraska, that's the foundational case on this issue where the Supreme Court held that inmates only have a liberty interest in parole if the state statutes create one. Then later in Jago v. Van Curen, the Supreme Court again held that even though an inmate had been told he was being released on parole, he still had no liberty interest and they could take it away without any due process. Counsel, does it matter whether the parole process is being undermined by malicious conduct in terms of whether there is a liberty interest? I don't think that it would matter as to whether there's a liberty interest unless the state statutes create one. I do agree with your point. I don't think there's any dispute about something wrong being alleged here. But other courts of appeals have addressed cases where the plaintiff is alleging there was something false in his denial of parole. In the Third Circuit, Stevens v. Chairman of Pennsylvania, an inmate was alleging that he falsely received a disciplinary and that's what caused him to have his parole deferred. They held he had no liberty interest there, so he was not entitled to due process. Similarly, in the Tenth Circuit, Thomas v. Montgomery, it was a class action of inmates alleging that the computer program they relied on was being applied inequally and inconsistently, which was resulting in false results. It was resulting in people being wrongfully denied parole. Again, the Tenth Circuit held there was no liberty interest under that state's statutes. And this court has considered Arkansas' parole statutes. This was back in 1984 in Parker v. Carruthers. I understand there's different statutes, but this court held there was no liberty interest in Arkansas' parole statutes. Now there still is no interest in Arkansas' parole statutes. Judge Rudofsky summarizes it really well on page 90 of the appendix in his 14th footnote. He just kind of runs through all of them. I don't want to repeat them. But one of the things I think that is different from these cases, and I think that perhaps if you refine how the argument's advanced, the questions clarify, right? I think that Mr. Serra is arguing that he had reached the stage in the parole process where he was actually conditionally paroled. And that he was entitled as a matter of law to be released on the approval of an appropriate housing plan. And that at that point, a local community probation parole officer elected to engage in a dishonest process to keep Mr. Serra from being able to occupy the home that his family had acquired for him. And he's claiming that it's because you've arrived at the point in the process where you have now a legitimate liberty interest. Because you've been paroled. They can't just revoke it at that point based on, nah, never mind, we changed our mind. You know, the only condition left on the release was that you found an appropriate housing arrangement. That's a great question, Judge. The issue is that Mr. Serra had not been paroled. He was approved, you know, subject to suitable plan. Which at that point, until the decision to actually parole him is issued, no liberty interest is created. So the legal question is still resolved in no liberty interest. And there is no liberty interest that arises until you're actually released. That's correct, under the Arkansas statutes. Yeah, if you look at the Arkansas statute and the case law, there's nothing that would carve out this sort of malicious process exception to that liberty interest. No, and that's the reason the malicious prosecution cases don't apply is because obviously people who are free world citizens have a liberty interest and do not go to prison. Yeah, and that's why I didn't call it a malicious prosecution. I'm calling it a malicious process. There's a dishonest process. Probably shouldn't call it malicious. But there's a dishonest process that has taken place. And I fully admit that he has pled that there was dishonesty or at least gross negligence on Mr. Zimmerman's part. I'm not trying to dispute that. Presumably, if the people are in cahoots, it is a conspiracy. There's some other state claim that would cover this, right? I would think so. I think for this appeal, besides the liberty interest issue, all the other issues have been waived. They weren't argued in the opening brief or the reply brief. Let me ask you a hypothetical question. Yes, sir. What if Arkansas parole officials just arbitrarily decided that they were refusing to review every third parole plan? And because of that, those who were denied review were incarcerated longer. Would that implicate any constitutional right? I don't know that that would create a liberty interest. I don't know. How about equal protection? I would think that there might be an equal protection claim, but I'm thinking about it here. I don't know what the protected class would be. I'd have to think about that a little more. I'm not honestly sure, Judge. Maybe just irrational state of action, possibly? That sounds pretty irrational, Judge. I would agree with that. As far as... It was just a question. I'm not sure that case has come up. I'm not aware of one either that's on point, Judge. I don't know that I could say how that would turn out. I would say also that Mr. Sierra's argument about what the law should be implies what the law isn't. And in this case, there just is no liberty interest. It's similar to just missing an element from a tort. If I walked up behind someone on the street and acted like I was going to hit them on the head and they had no reasonable fear or apprehension that I was going to hit them, they wouldn't have an assault tort. It's not something right. It's something that I did that was wrong. But there's still no assault tort. There's all kinds of conduct that we do not punish under the law unless it meets the correct elements. Here, Mr. Sierra's just missing the liberty interest element. Is this man Zimmerman an employee of the state or of a local governing body? He's a state employee under the parole board. And so who ultimately, is it in the record who ultimately ordered the release? I don't believe it's in the record, Judge. Under the law, who orders release? The board itself? Yes, so obviously the board is the one who orders release. I think that, and I came into this case late, so I'm not 100% sure on this. You've been prepared. Yes, sir. I tried to prepare. I think that what happened was our office thought that there was a problem here and tried to step in to make sure that it was rectified. But I don't know exactly the nature of that conversation or how it occurred. But unless there's any other questions, I'll waive the rest of my time. Thank you for your time, judges. Mr. Hall, we'll hear rebuttal. Well, my assumption is that the AG's office talked to somebody at parole board and they said, let's cut our losses and get this over with. I can't remember who called me, but they said, he's getting out tomorrow. And we arranged then to have him picked up in the morning. That was that fast. We were in the midst of litigation and I filed a pleading saying, our request for injunctive relief is now moot. He's out. So I had to tell the court that as soon as possible, because I didn't want them wasting time on it. Thank you. Very well. Thank you, both counsel. The case is submitted and the court will file a decision in due course.